**STATE of Missouri, Respondent,**

v.

**Jesse AKERS, Appellant.**

**No. 47160.**

Supreme Court of Missouri,

Division No. 2.

Oct. 12, 1959.

**32**

Cecil Block, St. Louis, for appellant.

John M. Dalton, Atty. Gen., William C. Blair, Sp. Asst. Atty. Gen., for respondent.

STORCKMAN, Presiding Judge.

The defendant was convicted of incest and his punishment assessed at imprison- ment in the penitentiary for a term of five years. He appealed but filed no brief. The state has fully briefed the case.

The information charges that on March 24, 1958, the defendant had sexual inter- course with his daughter. The motion for new trial charges, among other things, that the court erred in refusing to direct a ver- dict of not guilty and we shall first review the evidence.

The defendant, thirty-six years of age, was married and had three children, two boys, 12 and 8 years of age, and a daughter, 15 years of age, who is the prosecuting wit- ness. The defendant, his wife and their three children, lived in the Wendell Pruitt Housing Project in St. Louis at 2429 Biddle Street. The defendant was licensed as a private watchman and employed by the St. Louis Housing Authority; he was assigned to duty at various housing projects. His hours of work began at four o'clock in the afternoon and ended at midnight. His wife was employed as a clerk-typist by the St. Louis City Welfare Office; her hours of work were from eight a. m. to four forty- five p. m. The two boys attended Saint Bridget's Parish School in the neighbor- hood where they lived. They usually at- tended an eight o'clock mass before going to school in the morning. The daughter attended Rosati-Kain High School which started at eight forty-five a. m. The de- fendant usually drove his wife to work in his automobile.

The evidence most favorable to the ver- dict tended to prove that on the morning of March 24, 1958, the defendant took his wife to work and returned to the house at about five minutes before 8:00 a. m. The boys had left for church and school so the daughter was alone in the apartment when her father returned. She told him she need- ed school money and he told her to look in the pocket of his uniform in the bedroom. The defendant followed her into the bed- room and "started kissing and hugging" her. She protested, saying she would be late for school, but he pushed her onto the

bed and had "sexual relationship" with her; that is, he placed his penis in her vagina and completed the sexual relation. After the daughter redressed herself, the defendant drove her to school. She did not on that day tell anyone about the occurrence. She testified she had had other acts of sexual intercourse with her father over a period of two years prior to the act charged. The prosecutrix never told her mother about the sexual intercourse with her father, but about two weeks before March 24 she told Sisters at her school and a priest about the relationship. This information eventually was conveyed to a social worker with the Catholic Charities Association and then to the police.

The defendant was arrested on April 3, 1958. On being questioned by police officers, he admitted that he had wrestled with his daughter and placed his hands on her privates but denied he had had sexual intercourse with her. At the trial the defendant denied the charge and testified his daughter had threatened to "get even" with him because he had reported her to the police as a missing person when she stayed overnight with a girl friend.

Dr. Parker Howard Word, a specialist in gynecology and obstetrics, examined the prosecuting witness on April 3, 1958, and testified that her hymen, the membrane in the front of her vagina, had been ruptured. When a female has her first normal sexual intercourse the hymen is usually ruptured. The doctor could not say how long previous to the examination the rupture had occurred.

■ In determining the sufficiency of the evidence to sustain a conviction, the appellate court considers as true the evidence favorable to the state and the favorable inferences to be reasonably drawn therefrom and rejects evidence contrary to and in conflict with such favorable evidence. State v. Gannaway, Mo., 313 S.W.2d 653, 656 [3]; State v. Harmon, Mo., 243 S.W.2d 326, 331 [7].

■ The quantum of evidence necessary in this kind of criminal prosecution is described in State v. Nash, Mo., 272 S.W.2d 179, 183 [1], and State v. Ball, Mo., 133 S.W.2d 414, 415 [1], as follows: The uncorroborated evidence of the prosecutrix will sustain a conviction of incest or rape, but when the evidence of the prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case her testimony is not convincing but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained.

■ The evidence of the prosecutrix in this case is not contradictory or unconvincing. Although it does not need corroboration, it is supported by defendant's admission to the police and the doctor's testimony. It is not inconsistent with other facts and circumstances in evidence or with physical facts. The evidence is sufficient to sustain the judgment of conviction.

■ Three specifications of the motion for new trial are based upon the defendant's contention that the trial court erred in refusing to exclude evidence of previous acts of sexual commerce between the defendant and his daughter. As previously stated, the prosecutrix testified that she and her father had indulged in other acts of sexual intercourse over a period of two years prior to March 24, 1958. The incestuous act of March 24, charged in the information, was the only one submitted to the jury.

■ While proof of other distinct crimes is not ordinarily admissible, it is proper in a prosecution for incest to admit evidence of other acts of sexual intercourse committed by the defendant and the prosecutrix prior to the act upon which the prosecution is based "as well also as any acts of 'lascivious familiarity between the parties, not amounting to actual intercourse, * * * since such evidence is of such a character as tends to make it probable that the parties

did commit the specific offense charged. They constitute the foundation for an antecedent probability.'" State v. Pruitt, 202 Mo. 49, 100 S.W. 431, 432 [4]; State v. Hersh, Mo., 296 S.W. 433, 436 [11]; State v. King, 342 Mo. 975, 119 S.W.2d 277, 283 [10]; State v. Richardson, 349 Mo. 1103, 163 S.W.2d 956, 960 [3]; State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768 [7]. In State v. Boothman, Mo., 298 S.W.2d 370, and State v. Nash, Mo., 272 S.W.2d 179, there was evidence of prior incestuous acts, but the propriety of the admission of such evidence was not a question for decision. The trial court did not err in permitting reference to be made in the state's opening statement to these prior acts or in admitting evidence of them.

■ The defendant's next complaint concerns testimony given by Rhoda Noll, an employee of the Catholic Charities Association. First he says the court erred in permitting the witness to testify that the prosecutrix "discussed the incidents with her and that she advised the girl to visit and seek the advise and assistance of a Priest who is connected with the Parochial School that the girl attended." In disposing of this contention it is sufficient to say that the witness did not so testify. Further the defendant charges that the court erred in permitting the witness, Rhoda Noll, to testify, over the defendant's objection, that she had a conference with the prosecutrix and her mother in St. Patrick's Church in that the fact that the conference was held in a Catholic Church would influence the jury to believe the prosecutrix and disbelieve the defendant. Here again the record does not support the defendant. The witness testified without objection that she met the prosecutrix and her mother at their home and that they then went to St. Bridget's Church, but there was no testimony on direct examination that they had a conference there. It was the defendant who brought out on cross-examination that the witness talked to the prosecutrix in the Church. Since there was no objection to

the witness' testimony on direct examination, there is no basis for a charge of error. State v. White, Mo., 301 S.W.2d 827, 829 [5]. Obviously, the defendant cannot predicate error on a matter brought out by his own interrogation.

Next the defendant contends that the court erred in failing to declare a mistrial "for the reason that an attempt was made to tamper with the jury and influence their decision * * *." At the request of the defendant, the wife of defendant's counsel, out of the hearing of the jury, testified that during a noon recess she overheard a woman tell another that her sister was married to the defendant's brother and that "she didn't see why Jesse [the defendant] didn't plead guilty because he is guilty and so the family wouldn't be embarrassed" and that "if they put her on as a character witness, she could tell plenty about the wise gentleman." According to the witness this occurred in the corridor outside the door of the courtroom in the immediate presence of one and perhaps two of the jurors; at least one of them was about two feet away. The incident was reported to the court and when court resumed for the afternoon session, the court addressed the members of the jury as follows: "Ladies and gentlemen of the jury, I, now, inquire of each and of all of you collectively, has there been anything that occurred in your presence or in your hearing since we recessed this morning that you feel would prevent you from rendering a fair and impartial verdict in this case based upon the law as given to you in the court's instructions and on the evidence you will hear in the trial of this case?" The court asked any juror to raise his hand who felt that anything had occurred that would prevent his going on with the case and rendering a fair and impartial verdict "based on the law and evidence as you have heard it from the witness chair." No one did and the court then told the jurors that he assumed that they would render an impartial verdict in the trial of the case. The court advised

the counsel, out of the hearing of the jury, that he declined to grant a mistrial because his interrogation of the jury indicated that the alleged statements had had no effect upon them and that he would not declare a mistrial until it was shown to him that something had occurred which affected the jurors.

The trial court is vested with a broad discretion in determining whether a mistrial should be declared in these circumstances and its ruling will not be held erroneous unless an abuse of discretion is shown. State v. Ruyle, Mo., 318 S.W.2d 218, 220 [2]. We are impressed by the fact that the trial court acted promptly and apparently effectively to determine if prejudice had resulted because of the incident alleged. State v. Boothman, Mo., 298 S.W.2d 370, 374 [3]; State v. Ruyle, supra.

We find no basis in the record for holding that the trial court abused its discretion in denying a mistrial. State v. Hightower, Mo., 231 S.W. 566, 567–568, a prosecution for rape in which there was an alleged threat by the prosecutrix outside of the courtroom and in the presence of some of the jurors that she would get a gun and shoot the defendant; State v. Mangercino, 325 Mo. 794, 30 S.W.2d 763, 766, a murder case in which a witness and a juror talked about a machine gun in evidence while the attorneys were conferring with the judge at the bench; State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 90, a murder case in which it was charged that the jury received packages and communications from unauthorized persons; Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47, 51–52, a damage suit where a stranger remarked in the hearing of the jurors that the plaintiff could hear as well as anyone.

The defendant asserts that the court erred in failing to instruct the jury on "common assault and molestation", ap-parently meaning the crimes described in Sections 559.220 and 563.160 RSMo 1949, V.A.M.S., respectively. We have previously stated all the pertinent evidence. Section 556.220 authorizes a conviction in any degree of an offense inferior to that charged, and section 556.230 authorizes a conviction of any offense which is necessarily included in that charged against the defendant. The offenses of common assault under section 559.220 and molesting a minor with immoral intent under section 563.160 are not lesser degrees or included in the crime of incest under section 563.220 with which the defendant was charged and convicted. The court did not err in failing to instruct the jury with respect to the offenses stated in his motion. State v. Drake, Mo., 298 S.W. 2d 374, 377 [10]; State v. Villinger, Mo., 237 S.W.2d 132, 135 [8, 9]; State v. Hancock, 320 Mo. 327, 7 S.W.2d 273, 274 [2]; State v. Davidson, 73 Mo. 428.

The defendant further asserts that the court erred in giving on behalf of the state Instruction No. 1 because it was a comment on the evidence, invaded the province of the jury, directed a verdict of guilty, shifted the burden of proof to the defendant and did not properly define the crime of incest. We have examined the instruction carefully and find it proper in form and substance under the facts of this case and not subject to any of the errors and imperfections charged against it.

We have considered and ruled against the defendant all of the assignments of error in his motion for new trial. Further we have examined the information and have found it to be sufficient. The verdict is in proper form and responsive to the issues; the punishment fixed is within the statutory limits. Allocution was afforded and judgment and sentence were duly entered and pronounced.

The judgment is affirmed.

All concur.